Sara C. CROWE, by and through L. L. Crowe, as next friend, and Donald Cox, Appellants,

v.

The HERTZ CORPORATION, Appellee.

No. 23775.

United States Court of Appeals Fifth Circuit.

June 19, 1967.

James I. Parker, Cedartown, Ga., Wade C. Hoyt, Jr., Rome, Ga., Harold L. Murphy Tallapoosa, Ga., for appellants.

Donald M. Fain, Nall, Miller, Cadenhead & Dennis, Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, AINSWORTH, Circuit Judge, and FULTON, District Judge.

TUTTLE, Chief Judge:

This is an appeal from a summary judgment dismissing a personal liability damage suit arising out of an injury suffered by the appellant in the Bahama Islands while she was riding in an automobile driven by the defendant, Donald Cox, rented by the latter from the local Hertz Rent-A-Car station. The appeal is joined by Cox, an original defendant, whose cross-complaint against Hertz was

also dismissed by the order of the trial court.

The substance of the complaint was that the defendant, The Hertz Corporation, held itself out, both by long, continuous and saturation-type advertising to offer rent-a-car service throughout the world; that this service included furnishing of the highest standard of insurance coverage; that Cox, together with two friends, rented a "Hertz" car for their use from a rent-a-car station bearing the "Hertz" sign and symbol under circumstances that made Cox an insured driver; that in driving the appellant, Miss Crowe, on the roads in the Bahamas, Cox was involved in a head-on collision with another car owing to his lack of knowledge of the local driving requirements that automobiles be driven on the left rather than the right side of the road; that Cox's negligent driving seriously injured the plaintiff;[1] that Miss Crowe was entitled to the protection of a public liability insurance policy, both contracted for from the local agency and as held out under the worldwide advertising by the defendant, Hertz Corporation; that the policy actually issued for the protection of the drivers of the rent-a-car system in the Bahamas excluded protection of the drivers against liability claims of passengers and thus excluded any benefit to an injured passenger like Miss Crowe; that this exclusion was false and contrary to the representations contained in national advertising of the Hertz Corporation and amounted to a fraud upon the renters of automobiles such as Cox, for which recovery could be had for the benefit of the passenger.

In his defense, Cox admitted the accident, but denied liability, contending that the accident was not due to his negligence. Cox also filed a third party claim over against the Hertz Corporation, reasserting the grounds of action as alleged by Miss Crowe and also relying upon the holding out by the national advertising of Hertz Corporation to him as a renter of a Hertz car.

In view of our conclusion that the trial court erred in summarily dismissing not only Miss Crowe's, but also Cox's claim against the Hertz Corporation, without determining whether there existed facts upon which relief could be granted in the event that Hertz was found to be a proper party defendant, we find it necessary to make a fairly full statement of the facts.

The following is a statement which the trial court found to be uncontradicted facts. The statement is taken from the opinion of the trial court.

On June 7, 1965, the defendant, Donald Cox, with Bill Grubbs and Aldo Bergomi went to a desk bearing a large sign, "Hertz Rent A Car" at the Sheraton British Colonial Hotel in Nassau, Bahama Islands, where an automobile was rented. It was a 1964 or 1965 model Chevelle red convertible.

The three of them talked with each other in the presence of the man at the desk about sharing the use, and cost, of the car rental and discussed with the man the rental cost, with and without insurance, and decided to contract to pay the "with insurance" rate. The man at the desk, so Cox believes, wore a shirt or uniform with a parallelogram "Hertz" on it. Donald Cox believed that the three of them rented the automobile jointly, but only Bergomi signed the rental agreement.

Cox drove the rented car away from the rental agency on the afternoon of June 7, 1965, and the three of them took turns driving about the island. That night Cox and Grubbs used the car, Bergomi was not along. Cox and Grubbs returned the keys to the "Hertz" desk at the hotel that night. Bergomi, Cox and Grubbs divided the costs of renting the car.

Late the next day, on June 8, 1965, Bergomi told Grubbs and Cox that he

---

1. The allegations of the complaint showed that Miss Crowe had suffered brain damage and was unable to conduct the case on her own account, thus accounting for the suit being brought by her father as next friend.

wanted to again rent a car and asked them if they wished to "go in on it", and they agreed to share the use and expense of the car. Bergomi went alone and rented a Vauxhall 4-door sedan and the three boys drove the three Crowe girls about the island.

On the evening of June 8, 1965, Cox and the plaintiff, Sara Crowe went out in the car together and at about 11:30 P.M. were involved in a headon collision with another automobile and the plaintiff was injured.

After the accident the wrecked car was towed to a large fenced in lot bearing a large "Hertz" sign and there stored.

The Hertz signs were the same type as used by the Hertz Corporation in their advertising in the United States.

After the occurrence here involved, Mr. James I. Parker visited Nassau, and a "Hertz" Rent A Car station nearby and photographed the station, which bore "Hertz Rent A Car" signs.

On March 23, 1966, counsel for plaintiff, Harold L. Murphy, along with associate counsel, James I. Parker, went to the office of Hertz Rent A Car in Nassau, Bahamas, to interview its manager, Terry Morrissey, and while waiting for him, Mr. Murphy picked up from the ground to the rear of the offices certain receipts and certain rental car invoices showing the front and back of rental contracts.

Mr. Murphy examined the agreements found there with rental agreements issued by offices of the Hertz Corporation in the United States, and the rental agreement issued upon the automobile in which plaintiff was riding at the time of her injury, and in each instance found page one to be identical, and page two to be identical except for the filled in information as to type of car, charges, time, etc.

At the time of Murphy's visit to "Hertz Rent A Car" Nassau, Bahamas, he acquired a Hertz Rent A Car reservation entitled Hertz Reservation Office, 660 Madison Avenue, New York, N. Y., reserving an automobile for a custom-

er arriving at Nassau, Bahamas, on March 10, 1966, which address is also that of the executive offices of the Hertz Corporation as shown in the 1964 annual report of the Hertz Corporation.

At the office of Hertz Rent A Car in Nassau, "Hertz Rent A Car" signs were prominent in several places as were the same type signs in two rental station places in down town Nassau. This is the same type sign that appears on rental agreements issued by the Hertz Corporation and its licensees in the United States.

Murphy obtained at the Hertz Rent A Car office in Nassau a Hertz circular advertising Hertz Rent A Car and Hertz Service in Nassau—"We'd like to show you Nassau. Let Hertz put you in the driver's seat," etc. "Just give us a call at 77366 or 23496 and watch Hertz in action."

Van G. Hunt, an expert on American automobile liability insurance, has read advertisements displaying the Hertz Rent A Car in a parallelogram familiar to him as the Hertz trademark, which advertisements contain the language, "Rental fees include—all gasoline, oil * * * public liability, property damage, fire and theft insurance, and $100 deductible collision protection", and which state Hertz low rates cover everything including $100 collision protection. Hunt also read in the 1964 Annual Report of the Hertz Corporation:

"'Certified Service' was vigorously merchandised during the year to emphasize the quality of Hertz Rent A Car. This program—an industry exclusive, backed up a pledge of $50 in car rental credits—sets the highest standards for equipment used, maintenance, appearance, cleanliness, insurance coverage and reservation reliability. It is Hertz's assurance to each customer that he will be satisfied with all phases of his car rental anywhere in the world."

It is Mr. Hunt's opinion that "proper insurance" includes adequate public liability insurance to cover personal in-

jury caused by the negligence of an insured driver to protect him from claims of persons who might be struck by the automobile or injured while riding therein as a passenger.

"According to custom, practice and usage in the insurance industry, bodily injury liability insurance is considered the most important coverage in the field of automobile insurance and would certainly be included in 'proper insurance'.

"According to common usage and custom in the insurance industry, bodily injury liability insurance covering passengers of an automobile would certainly be included in 'insurance coverage' of 'the highest standard' as referred to as a part of 'certified service' in the Hertz Corporation 1964 annual report."

On August 15, 1965, Mr. James I. Parker went to Nassau, Bahamas, to investigate the automobile collision of June 8, 1965, and the claim of Sara C. Crowe and while there Mr. Terry Morrissey furnished to him a carbon copy of a rental agreement which is attached to the complaint, stating to Mr. Parker that this was the office copy of the rental agreement on the automobile in which plaintiff was injured.

At Morrissey's direction Mr. Parker went to the agency office of McCarthy Miller, Ltd., and was there told by the adjuster in charge that the automobile in which plaintiff was riding at the time of the collision was covered by a policy of insurance issued by Fireman's Insurance Company of Newark, New Jersey, but that there was no coverage afforded plaintiff because she was a passenger. Passengers, he stated, were excluded. The adjuster furnished to Mr. Parker a copy of the policy provisions which were made available to the Court.

The place where Mr. Morrissey was interviewed was outside the City of Nassau, near the airport, and bore several large Hertz signs similar in color and design to the usual Hertz signs.

A wrecked Vauxhall at the rear of the building was pointed out by Morrissey as the automobile in which plaintiff was injured.

Hertz, Hertz Rent A Car System, during the years 1956–64 advertised in Time Magazine. Many of these advertisements in the years 1956, 1957, 1958 and one or more in 1959 and 1960, and more than one in 1961 and 1962 stated that the low Hertz rates include everything, gas, oil, insurance or proper insurance. One advertisement on October 26, 1959, stated that Hertz has over 1750 offices spread throughout the United States and 31 foreign countries.

It further stated wherever you are, wherever you are going, there is a Hertz office nearby to serve you.

This advertisement further stated that Hertz rates include gas, oil and proper insurance.

Other ads stated "Hertz pays for insurance, gas and oil", or "Hertz pays for everything, insurance, gas and oil."

Mr. James Brown, an expert on automobile liability insurance is of the opinion that "proper insurance with reference to automobile coverages" would in all instances be "a liability insurance policy of standard terminology including liability claim protection as a result of personal injuries and property damages together with coverage for medical payments for passengers riding within the insured vehicle. This coverage is the customary coverage in the industry."

Mr. Brown is of the opinion that the insurance coverage afforded by the Fireman's Insurance Company policy identified by Mr. Parker is not standard, is inadequate and does not afford even elementary requirements of a liability insurance policy.

The Hertz Corporation 1964 Annual Report, at page 12, states:

"INTERNATIONAL OPERATIONS.

"Hertz Service outside the continental United States is provided by Hertz American Express International, Ltd., the subsidiary jointly owned

by the corporation (51 per cent) and by the American Express Company, Inc. (49 per cent) * * *."

The Hertz Corporation Annual Report 1965, under the heading "International Operations", at page 14, states:

"The strong leadership position of Hertz in the international field was further enhanced by expansion on a worldwide front in 1965. Since its formation in 1957, Hertz American Express International, Ltd., (49 per cent owned by The American Express Company, Inc.) has become the largest vehicle renting and leasing organization operating outside the United States."

The plaintiff, Sara C. Crowe, underwent brain surgery at Emory University Hospital on March 24, 1966, and is neither physically nor mentally able to give an affidavit for use herein at this time.

The plaintiff, prior to her injury, was a school teacher, a college graduate, well read and was a regular reader of Time Magazine and other national magazines and in the opinion of her father was familiar with the Hertz advertisements and the Hertz trademark.

In addition to the facts above stated by the trial court and adopted by us as correctly stating the posture of the matter at the time the trial court passed on the motion for summary judgment, the trial court also stated the following as being uncontroverted facts:

"It appears from the affidavit of Mr. Reiter, a vice president of the Hertz Corporation, that the Hertz Corporation was not doing business and did not do any business in the Bahama Islands during the year 1965, including June 8, 1965.

"That Caribbean Holding Company (Bahamas, Ltd.) was not on June 8, 1965, nor at any time since that date the agent or representative of the Hertz Corporation.

"That the Hertz Corporation did not furnish to the said Caribbean Holding Company any written rental agreement, and did not require that Caribbean Holding Company use the printed form as charged in the complaint.

"That Fireman's Insurance Company of Newark, New Jersey, was not an insurance carrier for the Hertz Corporation with respect to any matter set forth in the complaint in this case."

Based entirely upon the affidavit of Mr. Reiter and upon the Hertz Corporation's annual statement that "Hertz service outside the continental United States is provided by Hertz American Express International, Ltd." the trial court dismissed the complaint against Hertz. The court said:

"Plaintiff undertakes by circumstantial evidence to show that the Hertz Corporation was present and doing business in Nassau, Bahamas on June 8, 1965. However, the circumstances upon which Plaintiff relies are consistent with the testimony of Mr. Reiter and Hertz Corporation's statement in its annual report that 'Hertz service outside the continental United States is provided by Hertz American Express International, Ltd. * * *'

"A fact cannot be established for circumstances which are perfectly consistent with direct, uncontradicted, and unimpeached testimony that the fact does not exist." 32A C.J.S. Evidence § 1039, pp. 755, 756. See also Wood v. Keen et al., 207 Ga. 317(1), 61 S.E.2d 418.

"It is thus uncontroverted that the Hertz Corporation was not doing business in Nassau, Bahamas, on June 8, 1965, nor at any time that year. It is also uncontroverted that the company operating the Hertz Rent-A-Car place was not the agent or representative of the Hertz Corporation and that the Hertz Corporation had no knowledge of, and did not participate in the renting on June 8, 1965, of the car in which plaintiff was riding at the time of her injuries."

Thereupon the trial court dismissed the Hertz Corporation as a defendant, both as to the suit by Miss Crowe and

as to the third party claim by defendant Cox.

In dismissing the complaint against the Hertz Corporation it is obvious that the trial court did so on the theory that the transaction between Cox and his friends in the Bahamas was not with the Hertz Corporation either directly or through an agent of that company. This, it seems to us, overlooks the essential nature of the suit that is brought by Miss Crowe and particularly as contended for by Cox, who admittedly is a protected driver of a "Hertz Rent-A-Car" so far as being entitled to insurance protection is concerned. The complaint is based on the assumption that every person reading and relying upon the Hertz advertising is warranted in accepting as true the statement that wherever a "Hertz" car is rented worldwide, the person relying upon such advertising is guaranteed that the highest standard of insurance protection is offered; that in this case the defendant Hertz Corporation, whether or not acting through its agent in the usual sense nevertheless provided through its subsidiary corporation for the renting to Cox of a "Hertz" car which did not have the insurance protection guaranteed to the public. The trial court stated, "The court recognizes the principle of law that where misrepresentations are made to the public at large with the intention of influencing any member of the public, then anyone injured through proper reliance thereon may secure redress," citing Hines v. Wilson, 164 Ga. 888, 889(2) (b), 139 S.E. 802. The court then stated: "This principle of law which plaintiff seeks to invoke has no application under the facts here."

This conclusion was doubtless based upon the court's prior determination that the Hertz Corporation was not present either in person or through an agent in the Bahama Islands.

We think it plain that the presence or absence of the Hertz Corporation in the Bahama Islands at the time this automobile was rented by Cox and his friends is irrelevant to the cause of action asserted by the injured plaintiff. Certainly it is irrelevant to the cross action filed on behalf of Cox to secure his insurance protection in the event Miss Crowe should recover against him.

Moreover, we conclude that the trial court dealt too summarily with the question of the agency of the local "Rent-A-Car" station in the Bahamas for the Hertz Corporation. The quoted language in the trial court's opinion that a fact cannot be established by circumstances which are consistent with the direct, uncontradicted and unimpeached testimony that the fact does not exist, comes the Georgia case of Wood v. Keen, et al., 207 Ga. 317(1), 61 S.E.2d 418, which cites the United States Supreme Court's opinion in Pennsylvania R.R. v. Chamberlain, 288 U.S. 333, 53 S.Ct. 391, 77 L.Ed. 819 (1932), a case which we have had occasion to discuss fully in an opinion just published in Planters Manufacturing Co. v. Protection Mutual Insurance Company, 5 Cir., 380 F.2d 869, Dec. May 26, 1967. As we stated in that opinion (see footnote 4) the language of the *Chamberlain* case may no longer be a correct statement of the federal jurisprudence in light of the more recent Supreme Court decision in Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, a point which we felt was not necessary for our decision in the *Planters Manufacturing Company* case. But see Preston v. Safeway Stores, 163 F.Supp. 749 (D.C.). Nor do we think it necessary to determine this question here. This is true because we think it quite clear that the existence *vel non* of "agency," or "representative," a status or relationship depending upon all the facts and circumstances, is not such physical or historical fact of the kind contemplated within the rule. If it were possible for a witness to directly, without contradiction, and without impeachment, testify flatly that he was not an agent or representative of another so that no circumstances, however strong, and no facts relating to conduct of the

parties, or anything else could be permitted to overcome such conclusionary testimony, a large function of the fact finder's role in the decisional process would be eliminated.[2] It would be tantamount to a rule that if Party A swears he was not *negligent*, then Party B could not prove A's negligence by circumstantial evidence.

"[I]t is a well-settled principle of law that actual agency may be proved from the habits, course of dealing, and apparent relations; that is to say, that, where the course of dealing has been prolonged, with the knowledge and consent of the principal, actual agency can be inferred from such course of dealing."

Piedmont Operating Co. v. Cummings, 40 Ga.App. 397, 149 S.E. 814.

Whether an agency exists is not solely dependent upon the announced purpose of intention of the parties, for the law creates a relation of principal and agent if the parties, in their conduct of their affairs, actually place themselves in such position as requires the relationship to be inferred by the courts. Thus, even though a party may testify positively that there is no "agency" in existence between his company and another, this does not deprive the party relying on the existence of such agency to introduce evidence showing the actual conduct of the parties if such conduct is such as would permit an inference to be made that the relationship of agency truly exists. See Griffin v. Russell, 144 Ga. 275, 87 S.E. 10, L.R.A.1916F, 216.

See also 3 Am.Jur.2d, Agency, § 17, 18.

What we have said here deals with actual agency, not the creation of an agency by estoppel for the protection of one who has relied upon the appearance of such relationship. However, in this case it is equally available to the cross-claimant Cox to undertake to show, if the facts warrant it, that an agency by estoppel existed as to him, since he actually dealt with the "Hertz Rent-a-car" station in the Bahamas. Such an apparent agency could not exist for the benefit of the person injured without reliance upon the apparent holding out of the principal. See Piedmont Operating Co. v. Cummings, supra.

■■ Because of the determination by the trial court that the Hertz Corporation was not present in the Bahamas through its agent, the court did not consider whether the complaint alleged a state of facts upon which relief could be granted either to Miss Crowe or to the cross-complainant Cox. We, therefore, do not pass on these questions. We hold that the circumstances found by the court to exist were sufficient to require that the case not be disposed of on motion for summary judgment dealing with the existence *vel non* of an agency for the Hertz Corporation in the Bahama Islands. We also conclude that the actual presence of the Hertz Corporation by an authorized agent in Nassau is not requisite to the bringing of the complaint against the Hertz Corporation on the theory propounded

2. Purely as an illustration of the reason why such rule cannot be recognized, we note the obvious equivocal nature of Reiter's bald statement: "Caribbean Motor Holding Co. (Bahamas) Ltd. [the owner of the Hertz Rent-a-car station in Nassau] was not, on June 8, 1965, or at any time since said date, an agent or *representative* of the Hertz Corporation," (emphasis added) when viewed in light of the fact stated in the annual report for 1964: "Hertz service [dealing, of course, with service of interest and financial benefit to Hertz Corporation stockholders] outside the continental United States is provided by Hertz American Express International, Ltd." Should the jury be precluded from ascertaining whether the Hertz American Express International licensee in Nassau was not some kind of a "representative" of the Hertz Corporation which advertised its services to the stockholders as a significant part of the corporation's operations? At the very least it "represented" that it was in a position to carry out part of the Hertz Service, which included the plea, *worldwide*, "Let Hertz put you in the driver's seat."

by the plaintiff and adopted by the cross-complainant—that is to say, the theory that the Hertz Corporation acted contrary to its widely advertised statements relating to the making available of maximum insurance protection as to every Hertz car when, by whatever arrangement, it permitted its subsidiary to in turn license a local operator who failed to do what the advertisements promised. Again we do not here consider whether the complaint, as finally amended, established a cause of action, because this issue has not been passed on by the trial court. The ground for dismissing the suit being in error, the case must be returned for further consideration of the trial court.

The judgment dismissing the complaint and cross-complaint against Hertz Corporation is reversed and the case is remanded for further proceedings not inconsistent with this opinion.